**UNITED STATES GYPSUM COMPANY,**
**Plaintiff,**

v.

**DALE INDUSTRIES INCORPORATED**
**and Albert Fruman, Defendants.**

**Civ. A. No. 24892.**

United States District Court
E. D. Michigan, S. D.

Feb. 4, 1966.

Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., Patrick H. Hume, Hume, Groen, Clement & Hume, John K. Wise, Chicago, Ill., of counsel, for plaintiff.

Bernard J. Cantor, Daniel G. Cullen, Cullen, Sloman & Cantor, Detroit, Mich., for defendants.

THORNTON, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the admissions of the parties, the evidence adduced at the trial, and the inferences fairly and reasonably drawn from the established facts, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, United States Gypsum Company, is an Illinois corporation, having its principal office and place of business at Chicago, County of Cook, and State of Illinois.

2. Defendant, Dale Industries Incorporated, is a Michigan corporation, having its principal office and place of business at Detroit, in the County of Wayne, and State of Michigan, within the jurisdiction of this Court.

3. Defendant, Albert Fruman, resides in and has a place of business within the jurisdiction of this Court and in the Eastern District of Michigan and is an officer of and substantially owns and controls the Defendant corporation.

4. This is an action arising under the patent laws of the United States, and this Court has jurisdiction of the subject matter and of the parties.

5. On May 21, 1963, Letters Patent of the United States No. 3,090,164 were issued to Nels Nelsson, assignor to United States Gypsum Company, and United States Gypsum Company, the Plaintiff in this suit, is now the owner of the entire right, title and interest in and to said Letters Patent.

6. The Defendants, Dale Industries Incorporated and Albert Fruman, jointly and severally, have made and sold sound reduction channel (hereinafter sometimes called "resilient runner") which comes within the scope of Claims 1 and 2 of the patent in suit.

7. The making and selling of the accused sound reduction channel by the Defendants, Dale Industries Incorporated and Albert Fruman, constitutes joint and several infringement of Claims 1 and 2 of the Patent No. 3,090,164.

8. The Defendants, Dale Industries Incorporated and Albert Fruman, jointly and severally, have induced others to use the accused sound reduction channel in wall construction which comes within the scope of Claim 3 of the patent in suit and others have so used it within the jurisdiction of this Court and elsewhere.

9. Such use by others of the accused sound reduction channel in the wall constructions is an infringement of Claim 3 of United States Patent No. 3,090,164.

10. The inducing of others by the Defendants, Dale Industries Incorporated and Albert Fruman, to the use of the accused sound reduction channels in the wall constructions constitutes joint and several infringement of Claim 3 of United States Patent No. 3,090,164.

11. The Defendant Albert Fruman has induced and caused the Defendant Dale Industries Incorporated to make and sell the accused sound reduction channel and to induce others to construct the accused wall constructions utilizing the sound reduction channel.

12. By having caused the Defendant Dale Industries Incorporated to commit the above acts of infringement complained of, the Defendant Albert Fruman has induced infringement of Claims 1, 2 and 3 of United States Patent No. 3,090,164.

13. The Defendant Dale's sound reduction channel was copied from a specimen of sound reduction channel manufactured by the Plaintiff.

14. Substantial portions of the Defendant Dale's sales brochure "Sound Reduction Channel" illustrating the wall construction utilizing the accused sound reduction channel were copied from the Plaintiff's sales literature.

15. Since July 1963, the Plaintiff has complied in all respects with the requirements of the patent statute 35 U.S. C. § 287 in regard to notice and patent markings on its sound reduction channel.

16. On August 22, 1963, the Defendants were specifically notified by the Plaintiff of the alleged infringement of the United States Patent No. 3,090,164, and were furnished a copy of that patent.

17. Nels Nelsson, the inventor of Plaintiff's patent in suit No. 3,090,164 and assignor thereof to the Plaintiff, has devoted his adult life to work in the construction industry; for the past twenty-nine years he has been in the employ of the Plaintiff, United States Gypsum Company, where his duties have included the design and development of wall and ceiling structural systems of both the wet wall and drywall type.

18. Construction in which substructures of wooden studs or joists have applied thereto lath and wet plaster is re-

ferred to as a "wetwall" system, whereas construction in which the wood stud or joist substructures have applied thereto prefabricated panels of gypsum board is referred to as a "drywall" system. The Plaintiff's patent in suit is related primarily to the subject matter of drywall systems.

19. Mr. Nelsson testified at trial, and from his testimony and background convinced the Court that he in making his invention exercised more than ordinary skill in the art to which the subject matter of the invention pertains.

20. Prior to 1959, it was common practice in drywall construction to nail panels of gypsum board directly to wooden stud or joist substructures. Such constructions were used extensively in single family residential dwellings but were unsuitable for multiple occupancy buildings, such as apartments, motels, dormitories, etc., because of the characteristic of low resistance to sound transmission and the ensuing problem of sound transmission through party walls.

21. The industry had long recognized the need for meeting the problem of excessive sound transmission in drywall systems and finally, in response to this need, Mr. Nelsson invented his sound reduction channel and the wall construction utilizing the same, as disclosed and claimed in the patent in suit.

22. The invention of Nelsson, embodied in the patent in suit (No. 3,090,-164), includes wall and ceiling constructions of enhanced sound reduction characteristics and relates to a novel and unique component thereof called a sound reduction channel. Upon the advent of the Nelsson invention there came into being a drywall system of such improved resistance to sound transmission as to render drywall construction practically usable for the first time in multiple occupancy buildings. The sound reduction channel that is the subject of the patent in suit thus constituted an important advance in the drywall field.

23. The claims in the patent in suit are three (3) in number, the first two (2) of which relate to the sound reduction channel *per se,* while the third claim covers the drywall construction embodying the channel. The three claims are reproduced here:

"1. An elongate sheet metal resilient runner for attaching wall board to a supporting surface comprising a base flange lying in a first plane, a resilient web integral at one edge thereof with said base flange and lying in a second plane inclined at an obtuse angle to said first plane, a support portion, the opposite edge of said resilient web being coextensive with one edge of said support portion, said support portion lying in a third plane inclined to said second plane and extending laterally in an offset position relative to said base flange, said third plane being substantially parallel to said first plane, and a stop flange coextensive with the opposite edge of said support portion, said stop flange being inclined outwardly and extending toward said first plane but being shorter than the distance between said third plane and said first plane."

"2. An elongate sheet metal resilient runner for attaching wallboard to a supporting surface comprising a base flange lying in a first plane, a resilient web integral at one edge thereof with said base flange and lying in a second plane inclined at an obtuse angle to said first plane, said resilient web including elongated openings therein, a support portion, the opposite edge of said resilient web being coextensive with one edge of said support portion, said support portion lying in a third plane inclined to said second plane and extending laterally in an offset position relative to said base flange, said third plane being substantially parallel to said first plane, and a stop flange coextensive with the opposite edge of said support portion, said stop flange being inclined outwardly and extending toward said first plane but being shorter than the distance between said third plane and said first plane."

"3. A wall construction comprising in combination: a substantially planar supporting surface; an elongated sheet metal resilient runner for attaching wallboard to said supporting surface comprising a base flange lying in a first plane, a resilient web integral at one edge thereof with said base flange and lying in a second plane inclined at an obtuse angle to said first plane, a support portion, the opposite edge of said resilient web being coextensive with one edge of said support portion, said support portion lying in a third plane inclined to said second plane and extending laterally in an offset position relative to said base flange, said third plane being substantially parallel to said first plane, and a stop flange coextensive with the opposite edge of said support portion, said stop flange being inclined outwardly and extending toward said first plane but being shorter than the distance between said third plane and said first plane; and a wallboard attached to said support portion, said support portion and wallboard in a normal position being resiliently spaced from said supporting surface by said resilient web, said wallboard, with pressure applied normal to the exposed surface of said wallboard, being rigidly spaced from said supporting surface by said resilient web and said stop flange."

24. The issues were limited by pre-trial stipulation to that of the single defense of invalidity for the lack of patentability under Section 103 Title 35 U.S. Code. The only question which the Court had to decide was whether the differences between the subject matter of the patent and the prior art cited by the Defendants were such that the subject matter as a whole would have been obvious at the time the invention was made (December, 1959) to a person having ordinary skill in the relevant art.

25. Of the nineteen (19) prior art patents and one publication properly noticed to the Plaintiff prior to trial, Defendants actually discussed thirteen (13) of the patents during the trial through their patent expert, and of this group five (5) were patents which were before the Patent Office Examiner and are cited in the prosecution history of the patent in suit. The patents discussed are as follows: (an asterisk (*) beside the number designates a patent cited in the prosecution history).

| | |
|---|---|
| Crandall | 1,180,699 |
| Moore | Re. 18,848 |
| Balduf | 1,935,536* |
| Balduf | 1,935,537 |
| Woods | 1,966,778 |
| Higley | 1,971,411 |
| Balduf | 2,039,382* |
| Manske | 2,041,773* |
| Balduf | 2,101,001* |
| Nelsson | 2,718,673 |
| Binetti et al | 2,988,332 |
| Butler | 3,038,276* |
| Tvorik et al | 3,046,620 |

26. With respect to the patents considered by the Examiner in the Patent Office, nothing was adduced at trial which suggests that the Examiner failed to consider the pertinent art. The Court finds as a fact that the Patent Office did consider the most pertinent art.

27. With respect to the other of the patents discussed at trial but not noticed in the file history of the patent none is more pertinent to the claimed invention in suit than those references considered by the Examiner in the Patent Office in allowing the claims, and some of the patents were for constructions plainly non-analogous in structure and function to the patent in suit.

28. As to the other of the patents and the publication which were noticed to the Plaintiff and offered into evidence but not discussed at trial, the Court finds that none is more pertinent to the claimed inventions in suit than those references considered by the Examiner in the Patent Office in allowing the claims.

29. At the trial and over the objections of the Plaintiff, Defendants sought to introduce into evidence a patent and a publication noticed to the Plaintiff less than one week before trial. The Court

heard arguments from counsel for both parties and inspected the documents, and upon due and deliberate consideration refused entry of the documents into evidence because the Defendants failed to comply with the requirements of Section 282, Title 35 of the United States Code and for the additional reasons that the Defendants failed to present persuasive reasons for the Court to exercise its discretionary powers, and that the documents themselves did not constitute the proof for which they were offered.

30. In its effort to prove invalidity on the basis of obviousness the Defendants relied most heavily upon the Balduf patents, the Manske patent and the Butler patent, all of which (except Balduf '537) had been considered thoroughly and completely by the Patent Office and over which the claims in suit were allowed.

31. In their effort to assume the burden of proving the patent to be invalid as obvious according to provisions of Section 103 of the Patent Act, the Defendants called two witnesses. The first witness was Nels Nelsson, the patentee of the patent in suit and assignor to the Plaintiff; the other was an expert witness, Mr. Marvin R. Stern, who possesses a Bachelor of Science degree in chemical engineering from Drexel Institute of Technology, and a Juris Doctor degree from the Law School of George Washington University, and has been a patent examiner in the United States Patent Office and is presently a practicing patent lawyer in Washington, D. C.

32. There was no evidence adduced from Mr. Nelsson's testimony as witness for the Defendants that would in any way derogate from the presumption of validity of the patent.

33. Mr. Stern's testimony was directed to an analysis of the art relied upon by the Defendants but adduced no competent evidence to support a finding that one having ordinary skill in the art would have found the subject matter of the patent in suit to be obvious at the time Nelsson made his invention in December of 1959.

34. Except for Mr. Nelsson, the Defendants called no witness who was qualified to testify as one skilled in the art to which the subject matter of the invention pertains.

35. Defendants' patent expert, though knowledgable in patents generally as a former Patent Office Examiner, was not technically qualified in the field of the patent in suit, nor as an acoustical engineer competent to evaluate the sound transmission characteristics of the several prior art constructions put before him.

36. Giving full and complete consideration to the testimony of the Defendants' witnesses and to the prior art presented at trial, the Court finds that the Defendants have not met their burden of establishing facts that what has been patented would have been obvious to one of ordinary skill in the relevant art at the time the invention was made; to the contrary, the Court finds the Nelsson invention to be unobvious and patentable within the terms of Section 103, Title 35 of United States Code.

37. The Court finds as a fact that the testimony of the witnesses and other evidence adduced by the Defendants fall far short of what should be adduced in relation to the issue of invalidity on the basis of obviousness.

38. The Defendants' evidence is insufficient to sustain a finding that the patent in suit should not have been obtained because the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

39. The copying by the Defendant Dale of Plaintiff's product and literature referred to in Findings Nos. 13 and 14 above was admitted by Defendants in a pretrial stipulation between the parties in which the Defendants also admitted the infringement of all three claims of the patent in suit found in Findings Nos. 6–12 inclusive.

40. Any conclusion of law hereinafter set forth that is deemed a finding of fact is hereby adopted as a finding of fact.

## CONCLUSIONS OF LAW

Predicated upon the foregoing findings, the Court makes the following conclusions of law:

1. The Court has jurisdiction of the parties and over the subject matter of the action as raised by the pleadings.

2. The Plaintiff has sustained its burden of proof of the essential facts of its complaint as amended.

3. The Defendants have not sustained the burden of proof of the essential facts of the affirmative defense of invalidity of the patent in suit.

4. The Court finds for the Plaintiff and against the Defendants, on each of the issues of Plaintiff's complaint as amended.

5. A patent is presumed valid under the statute (Title 35 U.S.Code Section 282) and one who would overcome this presumption and establish invalidity has a heavy burden to discharge.

6. The presumption of validity is strengthened when Defendants have given the invention the tribute of imitation.

7. The presumption of validity is strengthened where the most pertinent art relied upon by the Defendants was before the Patent Office.

8. A patent cannot be invalidated by prior patents from non-analogous art.

9. United States Patent No. 3,090,-164, as to each and all of the three (3) claims thereof is in all respects good and valid at law.

10. Defendants have infringed the aforesaid patent by making, using, and selling the sound reduction channels therein described.

11. Defendants have infringed by inducing others to infringe the aforesaid patent by making wall constructions using the sound reduction channel therein described.

12. Defendant Fruman has infringed the patent in suit by inducing the Defendant corporation to commit the aforesaid acts of infringement.

13. The Defendants having admitted copying and use of both the Plaintiff's product and literature for promotion of the sale thereof and infringement of all of the claims of the patent in suit, as found in Findings Nos. 6 to 12, inclusive, 14 and 39, and having failed at the trial to make out a prima facie case of invalidity of the patent in suit, the Plaintiff may be entitled to an award of increased damages and of reasonable attorneys' fees. The determination of these questions is, however, reserved until and will be made at the time of the accounting to be had herein.

14. Plaintiff is entitled to:

(a) An injunction permanently enjoining the Defendants, those controlling Defendants, in privity with Defendants, or controlled by Defendants, or any thereof, from further direct or contributory infringement of said patent.

(b) An accounting for all damages suffered by Plaintiff in consequence of the infringement of said Letters Patent.

(c) A judgment for its damages, costs and interest and including any increase of damages and reasonable attorneys' fees to which it may be found entitled on the accounting.

15. Every finding of fact deemed a conclusion of law is hereby adopted as a conclusion of law.

## INTERLOCUTORY JUDGMENT

This cause having come on to be heard on the pleadings, evidence, and admissions of the parties, and this Court having been fully advised in the premises, on Plaintiff's motion for judgment at the conclusion of Defendants' evidence, the Court having given judgment for the Plaintiff and filed its oral opinion, on December 1, 1965, and the Court further

having entered its findings of fact and conclusions of law in accordance with Rule 52(a) of The Federal Rules of Civil Procedure, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. This Court has jurisdiction of the parties and of the subject matter of the suit.

2. Plaintiff, United States Gypsum Company, is and has been since its issuance, the lawful owner of the entire right, title and interest in and to United States Letters Patent No. 3,090,164.

3. Patent No. 3,090,164 is valid and has been infringed by Defendants, and each of them, as to Claims 1, 2 and 3 thereof, by their manufacture, use and sale of, and inducement to use, the wall construction and resilient runner disclosed and claimed in said patent.

4. Plaintiff is entitled to a permanent injunction restraining the Defendants, and each of them, from infringement of Patent No. 3,090,164, and to an accounting by the Defendants of their infringement thereof since 21 May 1963, the date of issuance of the said patent.

5. Defendants, Dale Industries Incorporated and Albert Fruman, their officers, agents, servants, employees, attorneys, successors and assigns and all those controlling Defendants, in privity, active concert or participation with Defendants, or controlled by Defendants, or any thereof, are permanently enjoined and restrained from directly or indirectly making or causing to be made, using or causing to be used, selling or causing to be sold articles embodying or made by using the invention or inventions embraced or covered by Claims 1, 2 and 3 of Patent No. 3,090,164 and from infringing, or inducing others to infringe, upon said claims of said patent in any wise whatsoever and in any way directly or indirectly contributing to the infringement of said patent by others.

6. Plaintiff shall recover from Defendants, or either of them, damages adequate to compensate Plaintiff for De-

fendants' infringement of Patent No. 3,090,164 since May 21, 1963.

7. On the accounting to be had herein it shall be determined whether the damages found should be increased as permitted by Title 35 United States Code, Section 284 and whether the Plaintiff should recover its reasonable attorneys' fees as permitted by Title 35 United States Code Section 285.

8. Defendants have no license, express or implied under Patent No. 3,090,-164.

9. Plaintiff having prevailed over Defendants, Plaintiff is awarded costs which it shall recover from Defendants.